HERDT, Appellant, v. KOENIG, Respondent.

St. Louis Court of Appeals, May 11, 1909.

1. **LANDLORD AND TENANT: Premises Common to Several Tenants: Duty to Make Premises Safe.** Where several portions of a property are let to different tenants, with a part in common for the use of them all, the obligation is imposed by law on the landlord to exercise reasonable diligence to keep such common portions of the property in a reasonably safe condition for such purposes as may reasonably be anticipated to be a proper use of the property.

2. ———: ———: ———: **Guests of Tenants.** Such obligation to use reasonable diligence to keep the property in a safe condition extends to the guests of the tenants whether expressly invited or voluntary callers.

3. ———: ———: **Proper Use of Premises.** To lean upon a fence is a proper use of the premises by a tenant or his guest and not an act of negligence.

4. ———: ———: **Duty to Make Premises Safe: Negligence: Proximate Cause.** Where property common to the use of several tenants was adjacent to a quarry and the landlord had erected a fence upon his own premises along the brink of the quarry, which fence had become rotten and dilapidated through the negligence of the landlord, and a boy who was visiting the premises, leaned upon the fence, whereupon it gave way precipitating him into the quarry and injuring him; in such case the proximate cause of the injury was not the proximity of the quarry but the unsafe condition of the fence.

5. **PERSONAL INJURIES: Contributory Negligence: Infants.**
Where a boy, ten and a half years of age, knew of the dangers
incident to playing around the brink of a quarry which was
adjacent to a tenement which he visited, and knew of the
rotten and unsafe condition of the fence surrounding the
quarry, and had been repeatedly warned against playing around
the quarry, nevertheless leaned on and over the fence, where-
upon the fence gave way and precipitated him into the quarry,
whereby he was injured, he was guilty of contributory negli-
gence as a matter of law and could not recover for the in-
juries so sustained. Knowing and understanding the danger
attending his act, he should be treated *sui juris* in respect to
it.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel
D. Fisher,* Judge.

AFFIRMED.

*Albert E. Hausman* for appellant.

The liability of a landlord, for injuries on common
portion of property extends to tenant's guest, guest of
tenant's wife, and on principal to guest of tenant's son.
Roche v. Sawer, 176 Mass. 71; Hart v. Cole, 156 Mass.
479; Henkel v. Muir, 31 Hun 28; Gleason v. Boehm,
58 N. J. L. 477; Fisher v. Jensen, 30 Ill. App. 11;
Curtis v. Kiely, 153 Mass. 123; Hiltenbeck v. Guhring,
131 N. Y. 674; O'Sullivan v. Norwood, 14 Daly 286;
Coupe v. Platt, 172 Mass. 458; Defiance W. Co. v. Oliver,
32 L. R. A. 736; McGinley v. Alliance Tr. Co., 168 Mo.
265. When property is occupied by two or more tenants
the presumption is that common portions are under
control of the landlord. McGinley v. Trust Co., 168
Mo. 265; O'Connor v. Andrews, 81 Tex. 28. And the
landlord is bound to use ordinary care to keep in safe
condition the parts of the building over which he re-
serves control. 18 Am. and Eng. Ency., page 220;
McGinley v. Trust Co., 168 Mo. 265; Nash v. Mill Co.,
24 Minn. 501. Though defendant did not own the
quarry, still his negligent maintenance of the fence, con-

curred in causing the injury and was jointly, with the existence of the quarry, the cause of the injury. Newcomb v. Railroad, 169 Mo. 409; Brenner v. City, 92 Mo. 482; Bassett v. St. Joseph, 23 Mo. 290. Whether the usage to which the fence was being put was one that should have been anticipated by the landlord, is a question for the jury under all the facts. McGinley v. Trust Co., 168 Mo. 265; Langlois v. Cohoes, 58 Hun 226. And it is not contributory negligence *per se* to lean on or against a railing, even on a bridge, or stairway. Langlois v. Cohoes, 58 Hun 226; McGinley v. Trust Co., 168 Mo. 265. Where a child be, there he may lawfully play. Straub v. St. Louis, 175 Mo. 421; Caskey v. La Belle, 101 Mo. App. 600; Canavan v. Stuyvesant, 27 N. Y. Supp. 413; Widing v. Insurance Co., 104 N. W. 239.

*Theodore C. Eggers* for respondent.

The petition fails to state a cause of action, nor does the evidence authorize a recovery by plaintiff. Negligence can be founded only on the neglect of some duty. Butz v. Cavanaugh, 137 Mo. 503; Troth v. Norcross, 111 Mo. 636; Beck v. Brewing Co., 167 Mo. 195; Feeback v. Railroad, 167 Mo. 216; Pattison's Mo. Code Pleading, sec. 837; 1 Elliott's General Practice, sec. 437. An owner of private grounds is under no obligation to keep them safe for the benefit of trespassers, intruders, idlers, volunteers or bare licensees. Schmidt v. Distilling Co., 90 Mo. 284; Brill v. Eddy, 115 Mo. 596; Elliott v. Carlson, 54 Ill. App. 470; Commentaries on the Law of Negligence; White's Supp., sec. 1025 and citations; Straub v. Soderer, 53 Mo. 38; Grimley v. McKechnie, 163 Mass. 494; Hargreaves v. Dean, 25 Mich. 1; Ratte v. Dawson, 50 Minn. 450; Moran v. Pullman Car Co., 134 Mo. 641; Smith v. Dold Packing Co., 82 Mo. App. 9.

NORTONI, J.—This is an action for damages alleged to have accrued to plaintiff on account of personal injuries received through defendant's negligence in maintaining a defective fence around a common yard adjacent to a rock quarry. While plaintiff was leaning over the topmost board of the fence, it became loosened from the shed to which it was nailed, and precipitated him to the bottom of the quarry beneath. Plaintiff received painful and serious injuries by coming in contact with the stones below. At the conclusion of all of the evidence on the part of plaintiff, the court directed a verdict for the defendant and plaintiff prosecutes the appeal.

At the time of his injury, plaintiff was an exceedingly bright boy, ten and a half years of age. He was born and reared immediately across the street and within one hundred feet of the place where he was injured. He was entirely familiar with the property and its surroundings. In view of these and other facts, it is believed the circuit court directed a verdict for the defendant on the theory that the plaintiff was negligent as a matter of law. The quarry into which plaintiff was precipitated by the breaking of the fence, is located immediately adjacent to the defendant's property, numbered 3874 Koscuisko street, in the city of St. Louis, and also adjacent to the Mississippi river. It appears the defendant owned the property mentioned and had let it to three several tenants. It consisted of a residence of considerable proportions, and a single lot of ground immediately adjoining on the north to a quarry which had been excavated on the south of it. The Burgher family were the defendant's tenants and occupied the rear portion of the house on the ground floor. Another tenant of defendant was a club which occupied the front rooms of the building on the ground floor. Mrs. Hamlinson was the defendant's tenant and occupied the entire second story of the building. The front of the building was about ten feet in the yard

from the street line, and it seems the entire yard which was common to all of the tenants, was that portion of the lot about ten feet in width in front of the building and about twenty-five feet in width immediately south of the building adjacent to the quarry. The lot and building were on a bluff immediately adjacent to the Mississippi river, and it appears that on a line from the street to the eastern extreme of the lot, immediately adjoining the south side of the building, the distance was about fifty feet. And while it appears the common yard to the property south of the building was about twenty-five feet in width immediately south of the house and adjacent to the rock quarry, it was only about six feet in width at the east end thereof. That is to say, this common yard south of the residence, was somewhat triangular in shape. Adjoining this yard and immediately on the south and southeast thereof, was a rock quarry and the Mississippi river bluffs. It does not appear just what depth the quarry had attained. It appears that its walls were about perpendicular, and it is clear from the record that it was of considerable depth. We infer that it was at least twenty-five feet in depth. At any rate, it was known to all concerned to be a dangerous place. On the south portion of the yard, adjoining the rock quarry, stood a shed about ten feet in width and probably twenty feet in length. From the southeast corner of this shed and to the east and northeast, ran a fence which the defendant had constructed on the very brink of the quarry. The fence was constructed of posts and common fence boards. The west end of the fence was made fast by nailing the boards to the shed. East of that and along the brink of the quarry, were several fence posts, to which the boards were nailed. The fence was designed as a protection against the dangers of the quarry. It consisted of three boards strung along and nailed to the shed and posts referred to. The lower board was placed

close to the earth, the second, about eighteen inches above the earth, and the third, about three feet above the earth. Plaintiff, a boy of ten and a half years of age, testified that the third or topmost board was about waist high to him. Plaintiff, with four other boys, was engaged in playing a game they mentioned as "I spy the stick" when he was injured. The precise circumstances touching his fall are these: He was in hiding in the corner between the shed and the fence while one of the other boys was searching for him and his companions. In order to ascertain whether the boy making the search was near the shed, he leaned his weight upon the topmost board of the fence near the shed and attempted to see beyond the west end thereof. While he was in this position, "hanging there and looking around the shed," as he expressed it, the board on which he was leaning gave way because of the nails which held it to the shed, drawing through the same. He was thus precipitated into the quarry. It appears that the plaintiff was an invited guest of the Burgher family, and at the time of his injury, was at play with the Burgher children in the yard, which was common to all of the tenants. Although it is true that the landlord is not bound to keep leased premises in repair in the absence of a covenant to do so, and is therefore not responsible in damages for injury to the person of the tenant or his guest resulting from the failure to repair (Ward v. Fagin, 101 Mo. 669), the rule is otherwise touching the matter of a common yard or court which is not let entirely to the use of one, but is reserved by the landlord for the common use of several tenants. Where several portions of a building or property are let to different tenants, with a part in common for the use of all, there is an implied obligation imposed by the law upon the landlord to exercise reasonable diligence to keep such common portions of the property in a reasonably safe condition for such purpose as may reasonably be anticipated to be a proper

use of the property for which it is let. The rule proceeds upon the theory that in such circumstances the landlord not having let the common portion of the property to any one tenant, he has reserved the control thereof to himself. Having thus reserved control, it is his duty to exercise ordinary care for the safety of those about the same, other than trespassers or mere licensees. That is, for the safety of all persons who are rightfully upon the premises. [McGinley v. Alliance Trust Co., 168 Mo. 257; O'Connor v. Andrews, 81 Tex. 28; Dollard v. Roberts (N. Y.), 14 L. R. A. 228; Nash v. Minneapolis Mill. Co., 24 Minn. 501; 18 Amer. and Eng. Ency. Law (2 Ed.), 220.] The principle extends as well to a common yard occupied by several tenants of the same property as it does to a common passageway, hall or stairway. [Udden v. O'Reilly, 180 Mo. 650.] That this yard was common to all the tenants, is established beyond question. Immediately south of the house and between it and the quarry was a well to which all the tenants occupying the premises repaired for water. Both the Burgher and Hamlinson families occupied the yard as well for the purpose of hanging out clothes on wash days and otherwise. The members of the club which occupied the front portions of the building, entered the same from the sidewalk through the front door, while both the Burgher and Hamlinson families entered only through the yard south of the building. It seems that all used the sheds and the yard was occupied also as a playground for the children. Plaintiff having been an invited guest of the Burgher family, was neither a trespasser nor a mere licensee in contemplation of law, but on the contrary, he was rightfully upon the premises by an express invitation of the defendant's tenants and was therefore within the scope of defendant's obligation to exercise ordinary care for his safety. [Curtis v. Kiley, 163 Mass. 123; Roche v. Sawyer, 176 Mass. 71.] And where the property is let to a tenant for residence purposes, it is

said such letting essentially contemplates that friends of the tenant's family will call upon and visit them, as is usual, without express invitation. Therefore the obligation of the landlord to exercise reasonable care to the end of keeping the common portions of the property in repair, extends as well, on the doctrine of implied invitation, to friends of the tenant's family not expressly invited, who call or visit at their home. [Henkel v. Murr (N. Y.), 31 Hun 28.] Plaintiff being rightfully on the premises, had he fallen into a trap or quarry within the defendant's common yard, while exercising ordinary care on his part, no serious question whatever would arise as to defendant's liability to respond for his hurt. Such was the case of Udden v. O'Reilly, 180 Mo. 650. However, it is urged that the quarry in this instance was not located upon the defendant's premises, and therefore no liability attached to him on account thereof. It is sufficient to say on this score that while the quarry was not upon the defendant's premises, it was immediately adjacent to and rendered the common yard dangerous. This fact was recognized by defendant and all concerned. In view of the danger attending the situation, the defendant had erected the fence referred to to the end of discharging his obligation to exercise reasonable care for the safety of those rightfully upon the premises. Having erected the fence upon his premises as a barrier to the attendant dangers of the quarry, it of course devolved upon him to exercise ordinary care to maintain the fence reasonably safe for the purpose. Now to lean upon a fence is a reasonable use thereof. Indeed, it is a use which every man who erects a fence may and should reasonably anticipate. In truth, it is a matter of common knowledge that ordinarily prudent persons lean upon fences, bridgerails and stair-banisters without taking thought of injury. Therefore, a fence maintained with reasonable care should be maintained with reference to such usual and ordinary user. That such is a common use for which a person

may not be adjudged guilty of contributory negligence as a matter of law, when the fence or banister appears to be reasonably safe for the purpose, has been frequently determined by the courts. [McGinley v. Alliance Trust Co., 168 Mo. 257; Langlois v. Cahoes (N. Y.), 58 Hun 226.]

However all of this may be, the defendant is not complained against for having maintained a dangerous quarry upon his premises, but on the contrary, the petition affirms negligence in respect of maintaining a defective fence on the brink of a quarry. Of course the rights of the parties must be determined with reference to the proximate, and not the remote cause of the injury, and if the negligent act of the defendant concurs with the act of another, whether negligent or not, and the two combined operate proximately to plaintiff's injury, without fault on his part, the defendant is liable to respond. Now it was the defective fence which was the proximate cause of the injury. If defendant had maintained a fence reasonably safe, no hurt would have befallen the plaintiff, and therefore the quarry, although contributing, was remote in the chain of causation. The defective fence was the proximate cause. Although the danger inherent in the situation arose primarily from the quarry, which was upon the premises of another, nevertheless if the negligence of the defendant in maintaining a defective fence contributed directly with the negligence of the quarry owner and operated as the proximate cause of plaintiff's injury, the defendant is liable for having failed to exercise ordinary care to the end of rendering his premises reasonably safe for such reasonable uses, as were essentially within the contemplation of the parties at the contract of letting. [Newcomb v. N. Y. C. Ry. Co., 169 Mo. 409.] It appears in proof that the defendant's fence was in a dilapidated and defective condition. It had been erected a number of years before, and it does not appear to have been recently repaired. The boards were decayed and the nails

were rusted and rotten. Defendant lived in the same block in which the property in question was located and was entirely familiar with the surroundings. In fact, he visited the premises once a month at least to collect his rent. Mrs. Burgher testified that she had communicated with him several times during the months before touching the defective condition of the fence and that the defendant had promised to repair the same. He had neglected to do so, however. Besides having actual knowledge for several months of this defective condition of the fence, the defendant was under the obligation to exercise ordinary care to ascertain its condition. [Udden v. O'Reilly, 180 Mo. 650.] It therefore appears the defendant was negligent in respect of his obligation to exercise ordinary care for the safety of the plaintiff and others rightfully occupying the common yard.

The more difficult question in the case is that touching the contributory negligence of the plaintiff, who was a boy ten and a half years of age at the time of the injury. However, it seems if there be any situation in which a bright, intelligent boy of that age should be so declared, it is in the case now in judgment, for he testified he was entirely familiar with the situation; he knew of its dangers, and knew, too, of the defective and dangerous condition of the fence. In fact this boy had received three whippings from his father before the occurrence which resulted in his injury, for playing about the dangerous precipice of the bluffs and rock quarry on this property. It appears in evidence that he and others had been frequently warned by Mr. Burgher, and upon more than one occasion, driven away from the premises because of the impending danger involved in their play about the quarry. It appears plaintiff was an exceedingly bright boy. Besides the testimony of his father, that he was very bright and intelligent, the boy himself gave testimony to the effect that he was far advanced in his classes at school, and although at the

time of the trial only twelve years old, was "in the sixth reader." As stated, he was born and reared just across the street in front of and within one hundred feet of the place of his injury. He said he had known some considerable time before his injury that both the fence boards and the nails which held them were rotten; that he knew the fence was dangerous, and that he had noticed the very evening of his injury and prior thereto, the decayed condition of the boards and nails therein. The date of his injury was May 27th; the hour about six-thirty in the evening, and in broad daylight. From his admissions, it appears the dangers of the situation were both known and understood by him. As stated before, the particular act which induced the injury was the hanging of his body over the topmost board of the fence adjacent to where the board was nailed to the shed, that he might see around the other end of the shed in an endeavor to discover his playmate who was searching for him and his companions. Plaintiff said he was "hanging there and looking around the shed." While thus hanging, with his weight on the topmost board of the fence, and looking around the shed, the board pulled loose from the shed by means of the nails pulling through the end of the board, and he was precipitated over the precipice.

Now to the end that the conclusion to be pronounced on this branch of the case may not be regarded as unjust, we will set out, *in haec verba,* certain questions and answers touching the knowledge and understanding of this boy as to the position assumed and its attending dangers.

"Q. What were you doing? A. I was leaning over, looking westward.

"Q. Back of the shed? A. Yes, sir.

"Q. You wanted to see if they were at the other end of the shed? A. Yes, sir.

"Q. Now, Leonard, then what happened? A. Then the board gave way and I fell.

"Q. Where did you fall? A. Down between two rocks.

"Q. Hadn't you been hanging around on those bluffs and didn't your father tell you to quit it right before you were injured? A. Yes, sir.

"Q. How many times has he told you to stay away from the bluffs? A. I don't know.

"Q. Don't you remember the time your father tied your hands and whipped you for going down to those bluffs before you were injured? A. He never tied my hands.

"Q. Did he ever whip you for going there? A. Yes, sir; but he never tied my hands.

"Q. He whipped you for going on the bluffs? A. Yes, sir.

"Q. How many times? A. I dont' remember.

"Q. How many times before the 27th day of May? A. *About three times.*

"Q. You once climbed over the bluff there and got down to a tree, didn't you?

"The Court: Before you got hurt? A. Yes, sir.

"Q. And they had to go and get you out, didn't they? A. No, sir.

"Q. Did you get out yourself? A. Yes, sir.

"Q. You got whipped for it, didn't you? A. I don't know.

"Q. It might have happened, but you don't remember, is that right? A. Yes, sir.

"Q. Did you say a little while ago that you got whipped for going around there? A. Yes, sir.

"Q. You were always told not to go there, were you not? A. Not many times.

"Q. Well, but you were told not to go there. A. Yes, sir.

"Q. *And you knew if you would go near that bluff you would be liable to fall in?* A. *Yes, sir.*

"Q. *You knew it was a dangerous place, didn't you? A. Yes, sir.*"

Touching his knowledge of the decayed and dangerous condition of the fence, he testified:

"Q. And you were leaning over, right by the shed, weren't you? A. Yes, sir.

"Q. Then the board broke loose? A. Yes, sir.

"Q. How did you fall? A. My grip gave way from the board.

"Q. Your grip? A. Yes, sir.

"Q. Didn't you just say that your grip gave way from the board? A. If I had kept my grip the board would have come loose from the post.

"Q. *How do you know?* A. *Because the board was rotten.*

"Q. Did you watch it to see whether it was rotten? A. *I saw it before that.*

"Q. Was it dark or light? A. It was light.

"Q. Before you went there, you saw it was rotten? A. Yes, sir.

"Q. You saw it was weak? A. Yes, sir.

"Q. *I am asking you on this day how was it?* A. *The nails were rotten.*

"Q. *Did you know that?* A. *Yes, sir.*

"Q. *You knew that at the time you were there?* A. *Yes, sir.*

"Q. *How did you know it at the time you were there it was rotten—the nails were rotten?* A. *I knew it before that.*

"Q. *You saw that, did you?* A. *Yes, sir.*

"Q. *How did you know it?* A. *Because I looked at it.*

"Q. *When did you look at it?* A. *Before I fell.*

"Q. *When you fell?* A. *Before I fell.*

"Q. *Well now, you say it was rotten at the time you fell, Leonard; how do you know that?* A. *Because I felt it then.*

"Q. *You had looked at it before you fell?* A. *Long ago I said I* looked at it.

"Q. Still you leaned on the board? A. Yes, sir.

"Q.  And the board gave way?  A.  Yes, sir.

"Q,  This yard; didn't you know you were not allowed to be around there?  A.  Yes, sir.

"Q.  You did?  A.  Yes, sir."

Mrs. Burgher testified for the plaintiff, and among other things, she said she had warned her own boys and those of her neighbors numerous times not to play around this quarry.  Aside from this, she had frequently chased them out of the yard and into the street.  On the particular occasion of this injury, she was not at home, however.  At the conclusion of her testimony appear the following questions and answers:

"Q.  You had not chased them out very shortly before this boy was hurt, had you?  A.  I didn't care no more.  We was angry and I didn't care for nothing. I was angry with the Herdts and I didn't care no more if he fell over or not because I told them so much and they wouldn't listen.

"Q.  You were angry at the Herdts and did not care whether he fell over or not?  A.  No, sir."

This was the state of facts from plaintiff and his witnesses upon which the court directed a verdict for the defendant.

Now touching this question of negligence on the part of plaintiff, it may be said that the law is extremely lenient toward those of tender years.  Children are not required to exercise the same degree of care and prudence as are persons *sui juris*.  However, generally speaking, those who have attained an age which is not wholly irresponsible are required to exercise the degree of care usually exercised by children of equal age.  That is, the degree of care which is usually exercised by the average child of the same age, possessed of ordinary childish prudence.  [7 Am. and Eng. Ency. Law (2 Ed.), 405 et seq.]  Nevertheless, it seems the degree of care required of a child is to be determined by reference to his knowledge of the dangers encountered and capacity to understand or appreciate the same.

Thoughtlessness, impulsiveness and indifference to all
but obvious and imminent dangers are the natural at-
tributes of childhood, and are therefore essentially reck-
oned with by the law in dealing with the question of
care which should be exercised by one of tender years.
In this view, two propositions have been ascertained
and settled in this State by our Supreme Court: The
first is, the courts will decline to declare a child only
eight years of age, guilty of contributory negligence as
a matter of law, for the reason that the capacity to
know and understand danger at such an immature age
is one about which reasonable minds must differ, and
therefore peculiarly a question within the province of
the jury.    [Holmes v. Mo. Pac. Ry. Co., 190 Mo. 98.]
On the other hand, the same court declared that it can-
not be adjudged as a matter of law that a child of nine
years is incapable of negligence.    [Ridenhour v. K. C.
Cable Co., 102 Mo. 270.]

In a more recent case, that of Spillane v. Mo. Pac.
Ry. Co., 135 Mo. 414, the same court declared the con-
duct of a bright, intelligent boy, nine years of age, who
was shown to both know and understand the dangers
attendant upon the operation of railroad trains, to be
a proper subject for ascertainment under the rules of
law which obtain to persons *sui juris*.    In that case,
the boy's mother had sent him to an icehouse beyond
the railroad track for some ice.    He was returning
therefrom, dragging the ice on the ground by means of
a string, one end of which was tied around the ice
and the other end around his wrist.    The boy walked
across the track, the piece of ice remaining on one side
and he on the other.    While in this position, the switch
engine approached and became entangled in the string
in a manner resulting in his injury.    It appeared he was
entirely familiar with the railroad, switch engine, and
its dangers.    However, he had taken no precautions by
looking and listening for its approach.    In this state
of the case, the court declared that as it appeared the

boy was bright and intelligent, and both knew and understood the dangers attending the crossing of a railroad, his conduct should be determined by reference to the same rules which obtain with respect to other persons both knowing and understanding such dangers. The rule of law stated in both this and the Ridenhour case is as follows: "While the law makes due allowance for the thoughtlessness and indiscretion of youth, it does not hold it necessarily irresponsible. To the extent that a child has knowledge and understanding of danger, or where it is of such nature as to be necessarily obvious even to one of his years, he is under a legal duty to avoid it." The doctrine of these cases has been asserted and reasserted by our Supreme Court upon numerous occasions.

In Payne v. C. & A. Ry. Co., 136 Mo. 562, the court in banc declared a bright, intelligent, negro boy, aged eleven years possessed of a good mind, and intelligent, guilty of contributory negligence as a matter of law for having attempted to cross the track before an approaching passenger train.

Another case before the court In Banc is Graney v. St. L., I. M. & S. Ry. Co., 157 Mo. 666, wherein a boy, aged eleven years and nine months, was standing within three feet of the railroad track while a freight train passed at a high rate of speed, about twenty-five miles an hour. Expert testimony introduced at the trial tended to prove that it was possible for the current of air incident to the operation of the train at that rate of speed to draw a boy of the age and size in question beneath the cars. The evidence tended to prove the lad came to his death in that matter. It appearing the boy was familiar with railroads and the dangers attending their operation, the Supreme Court declared him guilty of contributory negligence as a matter of law for the reason he must have known and understood the danger and recklessly encountered it.

In the more recent case of Walker v. Wabash R. R. Co., 193 Mo. 453, it appeared two boys were crossing a railroad, driving a team. The boys were seated upon the double-tree of the wagon. They stopped, looked and listened when within fifty feet of the track. Not seeing or hearing the train, they drove forward. An approaching train collided with the rear wheels of the wagon causing the death of the elder boy, who was fourteen years of age. It appeared in the case that the boy who was killed was familiar with the crossing and its dangers, and knew that it was about train time thereat. He had recently been hauling over the same frequently. In view of the fact that he knew and understood the dangers incident to crossing the railroad at the point mentioned, and notwithstanding the case went off on another question, the Supreme Court indicated that in its opinion the boy was guilty of contributory negligence as a matter of law for not having looked and listened a second time before going upon the tracks.

A more recent case in our Supreme Court on the subject is that of McGee v. Wabash R. R. Co., 214 Mo. 530; 114 S. W. 33. In that case, a boy, thirteen years of age, was walking on a public highway across a railroad track on an errand for his father. It appeared from the testimony of his younger brother that he was not seen to look and listen for approaching trains. Having been killed by the defendant's passenger train, the court declared him guilty of negligence as a matter of law.

It appears the Kansas City Court of Appeals, in Mann v. M. K. & T. Ry. Co., 123 Mo. App. 486, declared an intelligent boy, possessed of usual knowledge of natural facts, and twelve years of age, to be guilty of contributory negligence as a matter of law for having lain down and fallen asleep upon the depot platform near the tracks with knowledge that a train was soon to pass, which passing train inflicted his injury.

In a turntable case in Minnesota, the Supreme Court of that State declared a boy ten and a half years of age, who was injured while at play upon the turntable, guilty of contributory negligence as a matter of law, it appearing that he knew and understood the dangers incident to such an appliance. [Twist v. Winona, etc., Ry. Co., 39 Minn. 164.]

The Supreme Court of Iowa ruled the same with respect to a boy thirteen years of age, playing upon a turntable. [Merryman v. C. R. I. & P. Ry. Co., 85 Iowa 634.]

And the same court, in Carson v. C. R. I. & P. Ry. Co., 96 Iowa 583, affirmed the doctrine of the case last cited and declared a boy twelve years of age, possessed of good ability and usually well informed, who was injured while playing upon a turntable, guilty of contributory negligence because it appeared that he knew and understood the dangers incident to the appliance.

In Knox v. Hall Steam Power Co., 69 Hun (N. Y.) 231, the Supreme Court of the State of New York declared an average boy, twelve years of age, guilty of contributory negligence as a matter of law. In that case it appeared the boy was employed on the fourth floor of a building in which an elevator was operated. He was sent on an errand, approached the elevator shaft, and leaned over a chain which was stretched across the same to prevent persons from walking into the shaft. His purpose in leaning his weight upon the chain was to ascertain whether the elevator was ascending from the floor below. The chain broke and he was precipitated to the bottom of the elevator shaft, very much as was the plaintiff in this case precipitated to the bottom of the quarry because of a defective fence. However, in the New York case referred to, it did not appear that the boy knew the chain was defective and likely to break, whereas in the present case, plaintiff knew full well the facts pertaining to the defective fence and that it was dangerous to lean upon it.

Aside from the cases cited from other States, all of the Missouri cases above referred to deduce and reassert the doctrine of the Spillane and Ridenhour cases to the effect that even though a child be of tender years, yet if it appears from his testimony that he both knew and understood the danger encountered, his negligence in respect thereto should be treated as though he were *sui juris.* In the Spillane case, the boy was nine years of age only. In the Payne case, the boy was eleven years of age. In the Graney case, the boy was aged eleven years and nine months. In the case now in judgment, plaintiff was aged ten years and six months at the time of his injury. By a comparison of the several cases referred to, it seems danger in the present instance was even greater and more apparent than that involved in the Spillane case, or in the Graney case, and was as well known and understood. In the Spillane case, the boy was on one side of the railroad track, a piece of ice on the other, to which a string was attached. The danger involved in this situation from an approaching engine was certainly no more than that involved in the situation in this case when the plaintiff leaned his weight and relied upon a defective, decayed board and rotten nails, of which he knew, to sustain him over the brink of a precipice. A person would naturally suppose the ordinary string attached to the piece of ice involved in the Spillane case would break or be cut in two by the engine before inflicting severe injury upon the person holding the same. In the Graney case, the boy was standing within three feet of a freight train passing at a high rate of speed. He was drawn under the same by a current of air incident thereto. It seems that the apparent danger in that case was certainly not as great as that in the case now in judgment, according to the admission of the present plaintiff on the witness stand. If those cases are the law of this State (and they are, for they and their doctrine have been affirmed and reaffirmed on numerous occasions, as will appear by ref-

erence to the authorities heretofore cited) ; this plaintiff should be declared guilty of contributory negligence as a matter of law. From his own testimony it appears that he comes strictly within the rule of our Supreme Court on the subject. All of the cases referred to assert that where it appears the plaintiff, even though of tender years, both knows and understands the situation assumed is fraught with imminent danger and nevertheless encounters it, his negligence should be declared as a matter of law under the rule which obtains in respect of persons *sui juris*. It appears in this case plaintiff was reckless. He had received three whippings for having played about the place in which he was injured and had been warned against it time and again. He admits he knew its dangers and understood them. He admits he was familiar with the decayed condition of the fence and the rotten condition of the nails relied upon to hold the boards thereon. Notwithstanding which, he was "hanging there and looking around the shed" on the top board over the brink of a precipice, and thus brought about his injury. The plaintiff should be declared negligent as a matter of law.

The judgment of the circuit court should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.