SARAH McNULTY, Appellant, v. ST. LOUIS. & SAN FRANCISCO RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals. Submitted on Briefs October 9, 1911. Opinion Filed December 5, 1911. Motion for Rehearing Sustained. Cause Argued and Submitted June 3, 1912. Opinion Filed July 2, 1912.

1. RAILROADS: Crossing Accident: Failure to Give Statutory Signals: Proximate Cause: Instructions. In an action against a railroad company for the death of a child, killed by being struck by an engine at a crossing, an instruction given for defendant, that although the jury might believe that the bell on the engine was not constantly sounded for eighty rods before reaching the crossing, yet if they further found that such failure to ring the bell was not the direct or a contributing cause of the collision, their verdict should be for defendant, was not erroneous on the ground that it did not recognize defendant's duty to ring the bell constantly until the engine passed over the crossing, as required by section 3140, Revised Statutes 1909, for the reason that decedent was struck before the engine passed over the crossing, and hence the failure to keep the bell ringing while the engine was passing over it was immaterial; and, moreover, an instruction given for plaintiff covered the matter, by charging the jury that, before they could exempt defendant, the evidence must show, among other things, "that at the time said engine ran upon said crossing, the bell on said engine was rung eighty rods from said crossing and kept ringing until such engine crossed said street."

2. APPELLATE PRACTICE: Conclusiveness of Verdict. Where a question is properly submitted to a jury on conflicting evidence, their finding is conclusive.

3. RAILROADS: Crossing Accident: Contributory Negligence of Child: Instructions. In an action against a railroad company for the death of a child, eight years and seven months old, who was killed by being struck by an engine at a crossing, instructions submitting to the jury the question whether or not the child was guilty of contributory negligence are *held* free from error, so far as plaintiff is concerned.

4. ———: ———: Injury to Child: Suddenly Going in Front of Engine: Negligence: Proximate Cause. The operator of a railroad engine is not required to anticipate that a child may leave a place of safety near the track and suddenly dart upon the track immediately in front of the engine, but has a right to assume that the child will remain in the place of

McNulty v. Railroad.

safety, until it becomes reasonably apparent that he intends to cross the track, and if, after he starts to cross the track, the engine cannot.be stopped in time to avert striking him, the railroad company can not be held liable for his death, on the ground the operator of the engine failed to keep a proper lookout ahead, since the keeping of a lookout would not have prevented the accident, and hence the failure to keep it was not the proximate cause of the accident.

5. ———: ———: ———: ———: ———: ———: Instructions: Facts Stated. A child, eight years and seven months old, was struck at a crossing by the tender of an engine, which was running backwards. The evidence most favorable for plaintiff tended to show that decedent was standing about twenty-five feet from the track and ran diagonally across the street toward the track, the engine then being thirty or forty feet away and runing at a speed of from four to six miles per hour. When the engine was stopped after the collision, its nearest part (the front end) was fifteen feet beyond the point of collision. In an action against the railroad company for the death of the child, *held* that the evidence did not show the engine could have been stopped in time to have avoided the accident, even if the crew had seen decedent start to cross the street, and, therefore, the failure of the crew to look ahead of the engine could not have been the proximate cause of the accident; and hence it is *held*, that the court did not err in instructing the jury that plaintiff could not recover on the charge that defendant's servants failed to look ahead· of the engine to see whether its movements endangered persons on the crossing, and failed to stop or slow up the engine before it struck the child.

6. TRIAL PRACTICE: Conclusions: Necessity of Being Founded on Facts. Courts and juries are at liberty to draw conclusions only when founded on facts in evidence, and the evidence must be substantial, a mere scintilla not being sufficient.

7. RAILROADS: Crossing Accident: Injury to Child: Last Chance Doctrine. Where the position of a child, eight years and seven months old, when seen by a crew operating an engine approaching a crossing, was not such as to lead them to suppose that she was in imminent danger of injury.from the engine, and they had no chance to prevent running over her after she started to cross the track, there could be no recovery, under the last clear chance doctrine, for her death.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*A. R. Taylor* for appellant.

(1) It is no longer an open question in this state, that it is a  duty incumbent upon the operators of a steam railroad, whenever prudence requires them to keep a watch for persons approaching or on the track and in danger, such watch must be kept, even for trespassers and licensees, as well as for persons who may lawfully be near or on the track.　Isabel v. Railroad, 60 Mo. 481; Werner v. Railroad, 81 Mo. 374; Fieler v. Railroad, 107 Mo. 651; Ahnefeld v. Railroad, 212 Mo. 301; Murphy v. Railroad, 228 Mo. 79.　(2)　To watch out, as we have shown above, was to see this child as she ran toward the track.　The fireman of 141 could see her.　When he saw her or could, by the exercise of ordinary  care have  seen  her, she  was twenty-five to thirty feet away of the track.　It was then the duty of the operators of the engine to have either stopped or slowed down the engine to save her life.　Livingston v. Railroad, 170 Mo. 470; Cytron v. Railroad, 205 Mo. 719; Ahnfeld v. Railroad, 212 Mo. Mo. 301; Morgan v. Railroad, 228 Mo. 84; Ellis v. Railroad, 234 Mo. 679.　(3) The evidence of Mr. Moore tends to show that this engine stopped when ten feet past the child.　The engineer testified that the first intimation he had that anything happened some one hallooed just as we passed over the crossing.　Then he brought his engine to a standstill.　Here is evidence tending to prove that if the fireman had given him warning when the child started to run to the track, and when the engine was fifty feet away, he not only could have slowed up the engine and saved the child, but could have stopped the engine before he reached the place where the child was struck.　The fact that the train was stopped in fifteen to thirty feet is proof conclusive that it could be so stopped.　In the presence of physical facts, opinion evidence is not needed.　Beier v. Transit Co., 197 Mo. 231; Latson v.

Transit Co., 192 Mo. 466; Ellis v. Railroad, 234 Mo. 685; Moon v. Railroad, 237 Mo. 432. (4) The instruction given for defendant, numbered 9, was material and prejudicial error, because it deprived the plaintiff of a substantial ground of recovery pleaded in the petition and supported by evidence. It was a declaration of law that this ground of recovery could not be considered by the jury. When there is evidence to support a valid ground of recovery pleaded, it is prejudicial error to give such instruction. Meily v. Railroad, 215 Mo. 567; Kienlen v. Railroad, 216 Mo. 145; Luehrmann v. Gas Co., 127 Mo. App. 127; Lloyd v. Railroad, 128 Mo. 595; Rene v. Kansas City, 204 Mo. 269; Hack v. Railroad, 208 Mo. 581; Koerner v. Gas Co., 209 Mo. 144; Merritt v. Matchott, 135 Mo. App. 176. (5) Instruction number 10, was prejudicial error, in that it deprived the plaintiff of the legal presumption that the failure to ring the bell eighty rods from the crossing was the cause of the killing. Stotler v. Railroad, 200 Mo. 107; McNulty v. Railroad, 203 Mo. 475; McGee v. Railroad, 214 Mo. 530; Atterberry v. Railroad, 110 Mo. App. 608; Day v. Railroad, 132 Mo. App. 707. (6) Instruction number 11 was erroneous because it predicates the duty to ring the bell eighty rods from the crossing and until reaching the crossing, but does not require the ringing of the bell constantly until the engine passed the crossing as required by statute. Sec. 314 R. S. 1909; Bell v. Railroad, 72 Mo. 50; Spiller v. Railroad, 112 Mo. App. 491; Herring v. Railroad, 80 Mo. App. 562; Elliott v. Railroad, 105 Mo. App. 523; Ried v. Railroad, 107 Mo. App. 238.

*W. F. Evans* and *Jones, Jones, Hocker & Davis* for respondent.

(1) Where the petition charges negligence on part of the defendant on different theories, and there is no evidence to support one of his charges, he cannot go to the jury on that theory. Boland v. Railroad,

36 Mo. 484; Storage & Moving Co. v. St. Louis Trans- fer Company, 120 Mo. App. 410; Houck v. Cook, 116 Mo. 559; Heinzie v. Ry., 182 Mo. 528; Keown v. Rail- road, 141 Mo. 86; Davis v. Thompson, 209 Mo. 192; Milliken v. Commission Co., 202 Mo. 637. (2) Where one of the charges of negligence in plaintiff's petition fails to show by the evidence that such negligence was the proximate cause of the injury he cannot go to the jury on that charge. Theobold v. Transit Co., 191 Mo. 433; Warner v. St. Louis, 178 Mo. 125; Winter v. Rail- road, 99 Mo. 518; Meeker v. Railroad, 178 Mo. 173; Byerly v. Light & Power Co., 130 Mo. App. 593; Jack- son v. Elevator Co., 209 Mo. 506.

REYNOLDS, P. J.—This action was originally brought in the circuit court of the city of St. Louis, by the father and mother, under the provisions of section 2864, Revised Statutes 1899, to recover $5000, the pen- alty given by the section, for the death of their in- fant daughter. The case was taken on change of venue to the circuit court of St. Louis county. The father died pending the action and it has since been prose- cuted by the mother. The accident and the death oc- curred on the morning of the 15th of May, 1900.

It appears that this was the second trial of this case in the circuit court, there being a verdict for de- fendant on the former trial, which the trial court set aside for error in instructions given for defendant. Defendant appealed from that to the Supreme Court where the action of the trial court was affirmed and the cause remanded. [See McNulty v. St. Louis & S. F. R. Co., 203 Mo. 475, 101 S. W. 1082.]

This second trial was before the court and a jury and there was a verdict in favor of defendant. Judg- ment followed from which plaintiff appealed to the Supreme Court, the amount involved at that time ex- ceeding the jurisdiction of this court. Pending the submission of the cause to the Supreme Court the

jurisdictional amount of this court was changed from $4500 to $7500 under Act of the General Assembly, June 12, 1909, page 397, now section 3937, Revised Statutes 1909, and the cause was transferred by the Supreme Court to this court. It was first submitted to us on printed briefs and argument by respondent and taken as submitted on briefs by appellant. Holding that the trial court erred in giving the ninth instruction, we reversed the judgment and remanded the cause. Counsel for defendant, filing a motion for rehearing and that being sustained, the cause has again been submitted orally and on printed briefs and arguments.

At the instance of plaintiff the court gave seven instructions which appear to be all that were asked by plaintiff.

At the request of defendant the court gave five instructions, numbered from eight to thirteen. The errors assigned are to those numbered nine, ten and eleven. The correctness of instruction No. 9 is the principal point of controversy on this rehearing. We, however, reproduce the three instructions on which error is assigned.

The ninth instruction told the jury that under the pleadings and evidence plaintiff could not recover on the charge that defendant's servants failed to look ahead of the engine and tender to see if the movement endangered persons on the crossing and failed to stop or slow up the engine and tender before it struck the child.

The tenth instruction told the jury that before plaintiff could recover in this action "she must establish the fact that defendant was negligent in the respect or respects stated in other instructions, by the proper or greater weight of the testimony."

The eleventh instruction told the jury that even though they might find from the greater weight of the

evidence that the bell of the engine which struck the
child was not constantly sounded for eighty rods be-
fore reaching Theresa avenue crossing, yet if they also
found from the evidence that such failure to ring the
bell was not a direct and immediate cause producing
or contributing to cause the injury and death of plain-
tiff's child, their finding should be for defendant on
that issue.

Taking up these instructions in inverse order we
say:

First: The criticism of the eleventh instruction
is that it recognizes the duty of ringing the bell eighty
rods from the crossing and until reaching the cross-
ing but does not require the ringing of the bell con-
stantly until the engine passed the crossing, as re-
quired by statute, now section 3140, Revised Statutes
1909.

In Pope v. Wabash Railroad Co., —— Mo. ——,
146 S. W. 790, it is said: · "The object of a signal is
to give warning and if those on the track knew of the
train's approach without the signal, in time to escape
from danger, then failure to give the signal is of no
legal importance." Several cases are cited in sup-
port of this, among others McManamee v. Missouri
Pac. Ry. Co., 135 Mo. 440, l. c. 449, 37 S. W. 119. See,
also, Illinois Central R. Co. v. Dupres, 138 Ky. 459,
l. c. 462, 128 S. W. 334. Here the failure to keep the
bell ringing while crossing the street was wholly im-
material, for the child was struck before the engine
had passed over the street. Moreover, one of plain-
tiff's own instructions cover this, for it distinctly told
the jury that to exempt defendant, it must, among
other things, appear from the evidence "that at the
time said engine and tender ran upon said crossing
the bell on said engine was rung eighty rods from said
crossing and kept ringing until such engine crossed
said street."

Second: The argument in support of the error assigned to the tenth instruction is practically the same as to the eleventh and for the reasons given above that assignment is not tenable.

Third: This brings us to consideration of the ninth instruction.

It is necessary to a proper consideration of this to notice the testimony more fully than we did in the former opinion.

On the morning of the day of the accident the daughter of appellant, a little girl, eight years and seven months old at the time of the accident, on her way to school, had to cross defendant's tracks on Theresa avenue in the city of St. Louis. Her mother, the plaintiff, testifying, said of her: "She was a strong, healthy child and a wise one too." The family had lived during all the life of the little girl within a block of and to the south of the street upon which the railroad tracks were located. "The little girl crossed these tracks every day going to school. . . . She had gone to school for a year and a half and the trains passing pretty much all the time. Told the child to be careful. She was a smart child. Let her go alone; never had thought of the railroad crossing at all." Theresa avenue runs north and south, the railroad tracks from west to east, crossing the avenue at a right angle. Besides the tracks of the defendant railroad which there cross the avenue are the tracks of the Wabash, the Missouri Pacific and perhaps others. The Wabash tracks appear to be south of those of the defendant and closer in toward the street pavement. The railroad companies had a watchman at this crossing.

A young lady, who was in sight of the accident but north of the tracks and on the east side of Theresa avenue, testified that she did not see the child when struck; saw her under the tender; tender was in front of engine; first saw the child when she was in the

middle of the street; saw her hat whirling and next
saw her lying in the middle of the road; was a block
or a block and a half or two blocks away when she
saw the hat whirling. A lady companion of this wit-
ness testified that when she first noticed the child she
saw her lying in the road.

A teamster, witness for plaintiff, testified that he
was within a couple of hundred feet of the little girl
when she was killed; saw the engine "come and shoot
right by and pick her up and drag her right along."
The child was carried some distance. At the time the
engine shot across the street and caught the child,
the watchman was waving his flag "to beat the band.
. . . The engine ran about 150 feet east of Theresa
avenue before it stopped."

Another witness for plaintiff testified that he was
about thirty feet behind the child, driving his team;
"did not see the child hit, saw her right after, lying
in the middle of the street; the engine ran seventy-
five or one hundred feet east of Theresa avenue before
it stopped." The engine crossed about twenty-five
feet ahead of his team. On cross-examination this
witness said he first saw the little girl south of the
tracks; she was going north, walking by herself; she
walked past him. "She was going a pretty good
gait;" was a hundred feet south of the Frisco tracks
when she passed his wagon; was thirty feet ahead of
him when the accident happened.

This was practically all of the testimony of plain-
tiff and she rested, whereupon defendant asked an in-
struction in the nature of a demurrer which being re-
fused, defendant excepted.

Defendant thereupon introduced the crossing
watchman, who testified that he saw the little girl
coming along the street toward the crossing, on the
west sidewalk. There were two gentlemen coming
along with her. He raised his flag and shook it at her
and said, "Now don't try to cross, dear." She was

between the tracks of the Frisco inbound and those of the Wabash and on the west side of Theresa avenue. When he spoke to the little girl she smiled and stopped and those two gentlemen stopped with her, whoever they were. When he told her not to cross, she stopped and he turned his head to see how close the second engine was following the first and turned his head right back again to the crossing and saw the little girl rolling along the track on the north side of the engine and dropped his flag and jumped to catch her. On cross-examination this watchman said that when he spoke to the little girl she was south of the tracks and on the west side of the street. She was about twenty-five feet from the inbound Frisco track; he, witness, was on the north track. The Wabash and Frisco tracks are about thirty or forty feet apart, the Wabash south of the Frisco. There were two Frisco engines backing in on the inbound track—one following the other, about 100 or 150 feet apart. When he spoke to the little girl he was standing in the center of the street, near the out-bound track, which is the north track, and the little girl was twenty-five or thirty feet south of the inbound track, which is the south track. He was standing north of the outbound track. The two tracks of the Frisco are about eight feet apart. When he first spoke to the child the first engine (No. 141) was about fifty feet away; it was the tank of this engine that struck her. He waved his flag at her and told her not to try to cross, and she stopped. He did nothing else but stand there. Turned his eyes and noticed how close the second engine was following the first, and turned his eyes to the crossing and saw the little girl rolling along the track on the north rail. Asked if the first engine and tender had already passed, he answered: "It went past and stopped just about an engine length east of where the girl lay when we picked her up. . . . It was the first engine (No. 141) backing up

that struck her.'' After the tank passed between him
and the little girl he could not see anything of her un-
til he saw her on the track. She was struck by the
tank. He did not look to see how she came from where
she stopped to where she was struck; could not see.
Asked what was between him and the child, he an-
swered, ''Before the tender got to her she was stand-
ing still.'' Asked, ''How did she jump twenty-five
feet in front of the tank?'' he answered: ''They were
making about five or six miles an hour. It is very
easy when one has got ten or fifteen feet of a start to
undertake to get over.'' Asked if the tank could have
obscured his vision until it got between him and the
little girl, he said ''No.'' The child was about twenty-
five feet away and was standing there when the tank
was approaching. Asked if the child had come from
the place where she was standing and got in front of
that tank, whether he could not see her, he answered:
''She didn't come—from all the information that I
found, she couldn't come right across. She came ang-
ling across the way.'' He was in the middle of the
street and about thirty feet east and thirty feet north
of the little girl; in the middle of a sixty-foot street,
and she was on the west side of the street; could see
her until the tank got between him and the child and
after the tank got between them he could not see the
little girl. Asked if from the time he saw the child
standing on the west sidewalk and south of the track,
until the eastern part of the tender reached the side-
walk and from the time it got twelve or fifteen feet east
of there, he could have seen the child if he had looked,
he answered: ''No, sir; I couldn't either. Put you in
the same position and you wouldn't see her.'' When
he waved his flag at the little girl, she smiled and
stopped; gave no signal at all to the oncoming engine,
either that the track was clear or otherwise.

166 Mo. App.—29

An expressman testified that he saw the little girl start off to cross—"she started at a swift pace, a run you might call it."

A switchman on the following engine testified that the two engines were about two hundred feet apart; saw the little girl run on the track to get past the engine. The first he saw of her she was running; did not see her before she started to run. On cross-examination he said he could not say how far away from the crossing the head of the engine was when the child started to cross; does not know "whether she was on the street or in the yard when he saw her run. She was running to get around the engine." He at first said that when he saw the little girl start to run, she was one hundred or one hundred and twenty-five feet from the track; afterwards he put the distance at "about twenty-five feet."

The locomotive fireman of No. 146, the following engine, riding on his engine, saw the little girl before she was struck, standing on the south side of the in-bound main line about fifteen or twenty feet from the track on the west side near the sidewalk. The watchman beckoned to her and she smiled and then started to cross; does not remember whether she went straight across; did not see her struck; saw her come out on the north side of the engine; saw her lying on the east side of the street by the side of the north rail of the track. On cross-examination he testified that there was an obstruction which prevented the engineer of No. 141 from seeing the child; the fireman could see her. Witness "could distinguish the smile on the little child's face 200 feet away; she paused a second and then went on." Asked, "Or did she pause at all?" he answered, "Yes, sir; she hesitated." Question. "She hesitated and then went on?" Answer. "Yes, sir." Witness could not say whether she went straight across along the sidewalk or went the other way.

The general yard-master of defendant was riding on No. 141 at the time of the accident; saw the little girl standing on the south side of the tracks; she was standing still when he first observed her; could not see the watchman; he was on the opposite side. The little girl was standing between the Wabash and Frisco tracks, ten or fifteen feet from the Frisco tracks. When the engine was within ten feet of the sidewalk, she started to run diagonally across the street and tracks and passed out of his view. He hallooed to the engineer to stop and he immediatley applied the brakes and witness immediately went to the other side, got down and saw the child lying there northwest of the tracks. The engine was ten or fifteen feet past the child and was moving four or five miles an hour. On cross-examination this witness repeated that the engine was moving not faster than four or five miles an hour; that the little girl started diagonally across the track in the same direction the engine was moving and as soon as he saw her start he hallooed to the engineer and crossed to the engineer's side to see if the child cleared; saw her disappear behind the end of the tender and thought she had gotten across. The east end of the tender was about one-third the way across the street when the girl disappeared behind the tender; about fifteen or twenty feet from the sidewalk or building line. She was running probably as hard as she could run. At the time she started the east end of the tender was ten or fifteen feet west of the sidewalk from where she started.

The locomotive engineer of engine 141 testified that the engine was backing down from the Chouteau avenue yards and he was on the north side of the engine, the bell was ringing constantly and he had whistled for the crossing; saw the watchman on the crossing waving his flag. The engine was going five or six miles an hour; did not see the little girl before the accident. When he first saw her she was on the

north side of the track; stopped the engine after passing Theresa avenue. The first intimation he had that anything had happened was that some one hallooed just as the engine passed over the crossing; then he brought his engine to a standstill.

The fireman of the engine that struck the child testified that he was on the south side of the engine as it backed down; saw the little girl standing on the south side of the main line of the inbound track, about ten or fifteen feet from the track. Witness was looking toward the east. The child was standing still when he first saw her. After he first saw her he shut off the injector and the water and then got a glimpse of the child going back of the tank. He had to look after the water of his engine. It was not very long from the time he first saw the child until he saw her again; when he first saw her she was not close enough to be struck by a passing train; was ten or fifteen feet from the track. The next time he saw her she was disappearing behind the tank. On cross-examination he testified that when he first saw the little girl she was standing south of the Frisco tracks; does not know whether she was south of the Wabash tracks or not but she was ten or fifteen feet south of the Frisco tracks; could not say how long she stood there; had not moved while he looked at her; had not seen the watchman flag him; did not pay any attention to any one else standing there and could not say in what part of the street the child was when he first caught a glimpse of her. She was on the west walk or west side of the street and when he caught a glimpse of her going behind the tender he could not say how far out in the street she was.

Another witness in the service of the Terminal Railway at the time of the trial testified that on the day of the accident he was in the wall paper business and was going north on Theresa avenue when the child was killed; was on the east side of Theresa avenue and

saw the little girl. She was south of the Wabash tracks, in front of him and on the west side of the street; saw the watchman come out of his shanty and motion with his flag and heard him say something to the girl and she stopped, ''she stopped for just a couple of seconds and then she started to run diagonally from the west side of the street to the east side and supposed she stubbed her toe and fell.'' The engine was thirty or forty feet west of the crossing when the child started to run across there. She ran ''behind the tender,'' said the witness (evidently meaning in front of the backing tender), and was struck by the north side of the tender and fell on the north rail of the inbound track. On cross-examination this witness testified that the little girl paused a very short time; she was then on the west side of Theresa avenue. When she paused she was right at the Wabash tracks, which are eighteen or twenty feet from the Frisco tracks. ''She started and had a pretty good move on her; at that time the engine was thirty or forty feet west of the crossing. The girl ran around the tank of the engine, near the middle of the street.'' It seemed to witness that she fell. The engine must have been six or eight feet from her when she fell.

This is practically the evidence in the case. In stating that part of it which bears upon this ninth instruction, we have not confined ourselves to the abstract prepared by counsel but where we were in some doubt as to whether that abstract gave the context of certain parts of the testimony with sufficient accuracy to enable us to determine exactly what the testimony was, we have not hesitated to resort to the complete transcript which was brought up and is before us. We have not set out all the testimony relating to the sounding of the whistle and ringing of the bell. It may be said as to the latter that the affirmative testimony tends to show that the bell was sounded from the time the engine left Grand avenue, which is several blocks

west of Theresa, and thence onward east to the place of the accident. The only evidence that might be said to challenge this is the negative evidence of two or more witnesses, that they did not hear either a bell or a whistle. That matter, however, was properly submitted to the jury, as we have before stated, and the finding of the jury is conclusive on it. Nor have we set out the evidence as to the character of this particular crossing. It is sufficient to say of it that it appears to have been one over which people and teams were constantly passing at all hours of the day and it appears to have been in the vicinity of and on the way to the public school which the little girl attended and was used by teachers and pupils of that school when going to and returning from it.

While the answer in this case, after a general denial, pleads the contributory negligence of the little girl, the case was not submitted to the jury on that issue in like manner as where the injured party is an adult. On the contrary, the instructions asked by and given at the instance of plaintiff, distinctly take notice of the fact that the injured party was a mere child, her mother testifying that at the time of the accident she was eight years and seven months of age.

By the first instruction given at the instance of plaintiff, the court told the jury that if they found from the evidence that Mary McNulty "at the time of her death exercised ordinary care according to her age, discretion and experience and such as a child of her age, discretion and experience would exercise under the same or similar circumstances to watch out for cars or engines at such crossing and to avoid injury therefrom, then plaintiff is entitled to recover $5000," the instruction, in the part preceding this, stating the other facts necessary to a recovery. This same direction is in the second instruction given at the request of plaintiff, its concluding sentence being that if the jury found from the evidence "that plain-

tiff's child was exercising ordinary care at the time of her injury as defined in the other instructions,'' plaintiff was entitled to recover.

The third instruction given at the instance of plaintiff placed the case before the jury in this language: ''The court instructs the jury that the burden of proving that the deceased, Mary McNulty, did not exercise ordinary care according to her age, discretion and experience, and such care as a child of her age, discretion and experience would exercise under the same or similar circumstances, is upon the defendant in this case.''

The sixth instruction told the jury that if they found from the evidence that the child ''exercised ordinary care according to her age, discretion and experience at the time of her injury to avoid danger, and such care as could be expected from a child of her age, discretion and experience under the same or similar circumstances, then she was not guilty of contributory negligence, and this action cannot be defeated on that issue.'' No instructions given at the instance of defendant controverted these propositions. In fact instruction numbered 13, given at the instance of defendant, told the jury that if plaintiff's deceased child ''was of sufficient age and discretion to appreciate the danger from being struck by a moving engine and train, and the danger from crossings on which engines and trains were being constantly moved, then it became and was the duty of plaintiff's said child to exercise ordinary care according to her age, discretion and experience in avoiding danger therefrom. And if you find that the death of said child was the direct result of a failure of said child to exercise such care, plaintiff cannot recover even though you should also find that defendant was also negligent in not ringing its bell or in otherwise giving warning.'' No error is assigned to this instruction by counsel for appellant. It will therefore be seen that the learned trial court submitted

the question of the responsibility of this child in exact compliance with the rule announced by our Supreme Court in Holmes v. Missouri Pac. R. Co., 190 Mo. 98, 88 S. W. 623. There it is held that when the person injured is a child, that child is not to be held negligent if it exercised that degree of care which under like circumstances would reasonably be expected of one of its years and capacity; and whether the child used such care in a particular case, is a question for the jury. In the Holmes case the child was eight years old at the time it was killed by being run over by a locomotive engine of the defendant company.

In Spillane v. Missouri Pac. Ry. Co., 135 Mo. 414, 37 S. W. 198, the plaintiff to whose use the action was brought was a boy nine years and about four months old. Judge GANTT, speaking for our Supreme Court in that case, said (l. c. 426): "When the facts disclose that an infant is old enough to know the danger of going upon railroad tracks; that he is intelligent and is conversant with the management of trains thereon, we know of no principle of law which would absolve him from the duty of looking and listening for trains and from avoiding danger by getting off of the tracks. In this connection the analogies of the law respecting the doctrine of *doli capax* seem pertinent and may be invoked by way of illustration. . . . Doubtless a boy of this age living as plaintiff did for years in the immediate vicinity of this crossing knew the danger that he would incur in crossing the tracks better than thousands of adults who rarely have occasion to cross railroad tracks and yet are conclusively presumed negligent if they attempt to cross them without looking or listening."

In Ridenour v. Kansas City Cable Ry. Co., 102 Mo. 270, 13 S. W. 889, 14 S. W. 760, a case in which the plaintiff was a boy ten years old at the time of the injury Judge BARCLAY speaking for all of the court exce__ Judge SHERWOOD, who dissented on

another ground, however, said (l. c. 286-7) that while the law makes due allowance for the thoughtlessness and indiscretion of youth, it does not hold him necessarily irresponsible. "A child must be very much younger than plaintiff to warrant the court in declaring, as a conclusion of law, that he is incapable of negligence. To the extent that a child has knowledge and understanding of a danger or where it is of such nature as to be obvious even to one of his years he is under a legal duty to avoid it. . . . The standard of his (plaintiff's) duty was such reasonable care and diligence as characterized the average boy of his age. He would be legally responsible for a failure to exercise such care." This case is cited approvingly in both the Spillane and Holmes cases.

The authorities on the responsibility of a minor are so fully collated and the doctrine so thoroughly discussed by Judge Nortoni, speaking for this court, in Herdt v. Koenig, 137 Mo. App. 589, 119 S. W. 56, that it is unnecessary for us to go into them here. In the Herdt case the plaintiff was a boy ten and a half years of age. Our court held that a boy of his age, knowing the dangers incident to playing around the place where the accident occurred and knowing its unsafe condition, who had been repeatedly warned against playing around the premises, and who in disregard of these warnings was injured, was guilty of contributory negligence as a matter of law and could not recover for the injury so sustained. Whether the rule announced in the Holmes case or that announced in the Spillane case is to be followed here in considering the age of this child, is not necessary for determination, for, as we have before stated, the learned trial court very fully and by assent of counsel in the case announced the law for this case to be that in determining the act of the child the jury could take into consideration her age, and the trial court, as held proper in the Holmes case, submitted that question

as a question of fact to the determination of the jury. Most certainly appellant has no ground of complaint on these instructions.

The case then resolves itself, under the ninth instruction, as one turning upon the acts of the employees of the defendant.

The case nearest in line covering this phase of it that has been called to our attention is that of Illinois Cent. Ry. Co. v. Dupree, 138 Ky. 459, 128 S. W. 334, heretofore referred to by us on another proposition. In that case the facts save as to the age of the child are very much in line with the facts in the case at bar. In the Dupree case the child who was injured in consequence of being run over by a freight train of the railroad company was five years of age at the time of the accident. While attempting to cross the railroad tracks at a public crossing she was run over by a freight train and her feet so crushed that amputation became necessary. It is stated in the opinion (l. c. 463) that there was evidence tending to show that the train was running very fast and the court stated that it might be admitted that if the child had been standing on the track or had gone upon the track when the train was some distance away, the speed of the train might have played some part in the accident. The court, after calling attention to this, says: "According to all the proof, however, the child darted across the track immediately in front of the engine. Those in charge of the engine could not have anticipated that the child, who was in a place of safety, would suddenly take a notion to run across the track immediately in front of the engine. They had a right to assume that she would remain in a place of safety until it became reasonably apparent that she intended to cross the track. When she did start across the track, everything was done that could have been done to avoid the injury. As she ran rapidly and immediately in front of the engine, it is immaterial whether

the speed of the train was five, ten or fifteen miles an hour, for no power on earth could have stopped the train in time to avoid the injury. That being the case, the appellee (the plaintiff) failed to show that the negligence of appellant was the proximate cause of the injury complained of. On the contrary, all the evidence goes to show that appellee's injuries were the result of an unfortunate accident, for which appellant was in nowise responsible." That corresponds to the facts in this case so completely and is so entirely in harmony with the general doctrine of our own state, that we accept it as a correct statement of the law as applicable to the facts in this case and in justification of the action of the learned trial court in giving this ninth instruction.

With very great earnestness the learned and experienced counsel for appellant insists that if a proper lookout had been kept those in charge of the locomotive engine which was backing down on this track could have seen the child start to cross the track; that they did see her or could have seen her as she started to cross; that the engine was moving at such a low rate of speed, from four to six miles an hour, that they could have stopped before the child covered the fifteen or twenty-five feet between where she is proved to have been standing and the place at which she was struck. A very ingenious mathematical demonstration of the relative speed of the locomotive and of the child and of the relative distance to be covered is attempted in support of this theory. The trouble with this theory and attempted demonstration is, that they are not sustained by the evidence in the case. It is true that there is a dispute as to whether the child was standing twenty-five feet from the track at the time she started across, or ten or fifteen feet. Even assuming that it was twenty-five feet, the evidence does not show that had those on the engine seen her start from that point, the engine going at the speed

it was, could have stopped it in time to avoid hitting her. There is evidence of one or more witnesses that when the engine was stopped it was about fifteen feet beyond where the child was struck. Other witnesses placed it further, but giving plaintiff the benefit of assuming that the engine stopped fifteen feet from where the child lay, and that when the child started to cross the rear of the tender or water tank of the engine was as much as thirty or forty feet from the place where she attempted to cross, it is to be remembered that the engine and its preceding tender or water tank went not only this thirty or forty feet and fifteen feet beyond where the child was struck but also the length of the tender and engine beyond that, for the rear of the engine, according to the testimony, was that part which was fifteen feet beyond where the body of the child lay. It is true that when the watchman called to her he says the engine was then fifty feet from her, but there is positive testimony given by those who saw her start across that the engine was then thirty or forty feet away. Even assuming that the speed of the engine was only four miles an hour, as one witness says, although the trainmen give it at from five to six miles an hour, we cannot agree with learned counsel for appellant that this demonstrates beyond question that if the men in charge of the locomotive had seen, or by proper outlook could have seen the child start, then the engine and tender could have been stopped before the child was hit. Nor can we overlook the fact that this attempted demonstration by counsel rests entirely on theory. There is no evidence in the case that this engine and tender could have been stopped in time to have avoided hitting the child, even if the crew had seen her start to cross. No witness, competent from experience and observation, testified to this as a fact; even assuming that the jurors were familiar with the laws of mechanics, of kinetics, there are not sufficient facts in evidence from

which they could have solved this mechanical problem. Courts and juries are at liberty to draw conclusions only when founded on facts in evidence. The evidence, too, must be substantial—for as held by our Supreme Court in Dutcher v. Wabash R. R. Co., 241 Mo. 137, 145 S. W. 63, a mere scintilla is not sufficient—and we find no evidence in this case warranting the jury in finding negligence upon the part of the defendant's employees.

It must be rememberd that this was not an affair of even a moment; it all happened in seconds. The only witness who appears to have actually seen the occurrence, testified that when the child started to cross she started on a run when the tender of the engine was within fifteen or twenty feet of her. The watchman did not see her start across, for until the tender of the engine came between him and the child, she was standing still. When she started she ran diagonally across the street immediately in front of the oncoming danger. Before she crossed the track or had cleared the north rail her hat flew off and she stumbled and fell, falling between the rails or near the north rail, exactly where is not very clear, and was struck and killed. There is no evidence whatever in the case on which to found a conclusion that any care on the part of those in charge of the engine could have prevented the catastrophe. We are not prepared to hold that when a train crew approaching a crossing sees a child standing alongside of the rails but beyond danger, they are to assume that she may attempt to pass ahead of them and must stop.

We hold, therefore, that the ninth instruction was properly given.

Neither the humanitarian nor the last clear chance rule are involved or were invoked here. If we were to apply either to the facts, we do not think that this defendant, even considering the age of the child, could be held to have violated them. [Baecker v. Mis-

souri Pacific Ry. Co., — Mo. —, 144 S. W. 803.] The position of the child when she was seen by those operating this locomotive was not such as to lead them to suppose that she was in imminent danger of injury from the oncoming machine, nor had they any chance —any opportunity to save her.

The result is that the verdict of the jury and the judgment of the circuit court thereon should be affirmed, and our former judgment of reversal and remander set aside. It is so ordered. *Nortoni,* and *Caulfield, JJ.,* concur.