SAMUEL GRAY et al., Respondents, v. WABASH RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, May 2, 1911.**

1. **DEATH BY WRONGFUL ACT: Second Section Damage Act: Strictly Construed: Railroads: Master and Servant.** Section 5425, Revised Statutes 1909, imposing a penalty for the death of any person, caused by the "negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive," etc., including an employee whose death is caused by the negligence of a co-employee, is penal, in so far as it authorizes a recovery of not less than two, nor more than ten, thousand dollars, in the discretion of the jury, without proof of pecuniary loss. Such penal provisions are sustained alone under the police power of the state, and the statute is, therefore, to be both strictly construed and pursued; and hence one suing a railroad company under the statute for the death of one of its employees must show that the wrongful act resulting in death was an act of negligence, unskillfulness or criminal intent of some officer, agent, servant or employee of the railroad, "*whilst running or managing a locomotive, car, or train of cars.*"

2. ———: ———: **Death of Station Agent's Helper: Delivering Orders to Moving Train: Railroads: Master and Servant.** Where an assistant station agent, after delivering, by means

of a hoop, an order from a dispatcher to a moving train passing the station, pertaining to the movement of the train, directed a servant under him to run by the side of the train and receive the hoop, and, in doing so, the servant collided with a post and was thrown under the train and killed, a cause of action as for his wrongful death would not lie, under section 5425, Revised Statutes 1909, since the order given by the assistant agent was not an act of negligence committed "whilst he was running, conducting or managing" the train.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED AND REMANDED.

*J. L. Minnis* and *Robertson & Robertson* for appellant.

The petition does not state a cause of action and the court erred in overruling the defendant's demurrer thereto and in overruling the defendant's objection to the introduction of any evidence and in overruling the defendant's motion in arrest of judgment. All that part alleging that the work of getting the hoop was contrary to the plaintiff's consent, fails to state facts sufficient to constitute or aid a cause of action, and must be treated as surplusage, because it does not fall under the first section of the Damage Act, sec. 2864, R. S. 1899 (now 5425.) Rapp v. Railroad, 106 Mo. 422; Crumpley v. Railroad, 98 Mo. 34.

*H. S. Booth* and *Barclay, Fauntleroy & Cullen* for respondents.

(1) Hampton assisted in controlling and directing the movement of the train, and his negligence creates liability under the first section (5425) of the Damage Act. Rinard v. Railroad, 164 Mo. 270; Callahan v. Railroad, 170 Mo. 495. (2) A person is engaged in running, conducting or managing a train where for the time being he has authority to direct the movements and management of the train, or the men on it. It is not neces-

sary that he should be actually on the train itself and more than one person may be engaged in managing a train at the same time. Caron v. Railroad, 164 Mass. 523; Donohoe v. Railroad, 153 Mass. 356; Brady v. Railroad, 184 Mass. 225.

NORTONI, J.—This is a suit for damages alleged to have accrued to plaintiffs through defendant's negligence. Plaintiffs recovered and defendant prosecutes the appeal.

Defendant, an incorporated company, owns and operates a railroad through the city of Centralia, Missouri, and plaintiffs are the parents of Leroy E. Gray, a minor, who came to his death through being run over by defendant's train adjacent to its depot at that place. The suit proceeds at the instance of the parents under section 5425, Revised Statutes 1909, for the recovery of the penalty of not less than two thousand dollars nor more than ten thousand dollars for every such death as shall occur through the negligence of an agent or servant of defendant "whilst running, conducting or managing any locomotive, car or train of cars," etc., and the court directed the jury that in the event it found the issue for plaintiffs the recovery should be for not less than two thousand dollars nor to exceed ten thousand dollars, as prescribed in the statute.

Plaintiffs' son at the time of his death was about eighteen years of age, and it appears he was in the employ of defendant at its station at Centralia, where he was being taught the avocation of railroad station work, but with positive directions from his father to defendant that in no event should he be detailed to duties about moving trains. One Hampton, defendant's assistant station agent, was the immediate superior of plaintiffs' son, with power and authority to direct a performance of duties within the scope of his employment, and at the time he was killed, the youth was obeying an order of Hampton to get a hoop. The hoop referred to

had immediately theretofore been given by Hampton to defendant's brakeman on a passing locomotive as a means of conveying to him an order relating to the progress of the train, and, after so doing, Hampton directed plaintiffs' son to "get the hoop," which, it is said, involved the idea that the young man should run after the locomotive and receive the hoop from the brakeman upon his removing the message therefrom and throwing the hoop away from the engine. The train which occasioned the death of plaintiffs' son was of freight cars with locomotive attached, and passed through Centralia during the day at the rate of about twelve or fifteen miles per hour, and it appears that it became the duty of Hampton, the assistant agent, to deliver a telegraphic train order to those on the locomotive pertaining to its further progress and movements. An appliance, spoken of in the evidence as a "hoop," is supplied to station agents on defendant's railroad for the purpose of delivering messages and train orders, when required, to those on trains which pass the station without stopping, and this hoop is constructed from two strands of light wire coiled together so as to constitute a circular hoop of about two feet in diameter. The station agent, after folding the paper containing the message or train order, inserts it between the two wires thus coiled together and holds the hoop aloft, so that one standing in the gangway of the locomotive may catch it on his extended bended arm while the train is in the act of passing. At the time in question, Hampton had thus performed the act of delivering the message to defendant's brakeman, who stood in the gangway of the locomotive attached to the passing train and caught the hoop as Hampton tendered it aloft. As the brakeman was in the act of removing the message from the wire, with the purpose of returning the hoop to some one who might be present to catch it or to throw it upon the depot platform, as was usual, Hampton directed plaintiffs' son, who was standing near, to "get the hoop." In obedience to this order, the young

man ran along the depot platform near the passing train and followed the locomotive with his eye upon the brakeman, who was removing the message from the hoop, and while thus running collided with a semaphore post, which was erected on the platform, about four feet from the train, in such a manner as to be precipitated under the moving train, by which he was run upon and killed. Defendant's semaphore arrangement is a substantial post about twelve inches square, erected immediately in front of and considerably apart from its depot, on the platform, about five or five and a half feet from the rail of the track, for the purpose of conveying signals to trains at night by means of signal light which are maintained thereon about twenty feet above the platform. Plaintiffs' son, who was a bright, intelligent youth, was entirely familiar with the semaphore post and its location, for he had been in defendant's service at the depot three or four months, but this is unimportant in the view we take of the case, as it will be unnecessary to consider the matter of his contributory negligence, if any.

After setting forth appropriate matters of inducement, and averring that plaintiffs negotiated the contract of employment with defendant as to the services of their son, by which it was stipulated and agreed he should in no event be assigned to duties which brought him in contact with moving trains, the petition recites two specifications of negligence on which a recovery is sought. These specifications relate to the conduct of defendant's assistant agent in carelessly ordering plaintiffs' son to "get the hoop" at a time and under circumstances when an opportunity for reflection on the mode of executing the order was not afforded, and to defendant's negligence in maintaining the semaphore post at a position on the depot platform where one engaged in the execution of a sudden and peremptory order was likely to collide therewith. The theory advanced and relied upon for a recovery is, that as plaintiffs' son was thus suddenly and peremptorily ordered to "get the hoop,"

which involved the performance of a task outside of the scope of his employment, the relation of master and servant did not obtain with respect to the immediate subject-matter, for the reason the contract of employment, made alone with decedent's parents, excluded it, and the risk appertaining to the performance of such order was therefore an extra hazard. Though this theory be a sound one in some circumstances, it is entirely clear it avails nothing to plaintiffs in the instant case, under our penal statute, for the negligence relied upon in the petition and disclosed by the evidence, if any, is not attributable to an agent or servant of defendant "whilst running, conducting or managing any locomotive, car or train of cars." The statute, under which the suit is prosecuted, in so far as pertinent here, operates only to transmit a cause of action as for a wrongful death to the persons named in subsequent provisions thereof, for certain derelictions of duty as therein mentioned, with respect to the different common carriers enumerated, and unless the breach of duty relied upon pertains to one of the several classifications therein stipulated, no recovery of the penalty may be had. So far as relevant on this feature of the case, the statute is as follows:

"When any person, including an employe of the corporation, individual or individuals hereinafter referred to whose death is caused by the negligence of a co-employee thereof, shall die from any injury resulting or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car or train of cars, or any street, electric or terminal car or train of cars, or of any master, pilot, engineer, agent or employee whilst running, conducting or managing any steamboat, or any of the machinery thereof, or of any driver of any stage coach, automobile, motor car or other public conveyance whilst in charge of the same as a driver; and when any passenger shall die from any injury

157 App—7

Gray v. Railroad.

resulting from or occasioned by any defect or insufficiency in any railroad, whether the same be a steam, street, electric or terminal railroad or any part thereof, or in any locomotive, car, street car, electric car or terminal car, or in any steamboat, or the machinery thereof, or in any stage coach, automobile, motor car, or other public conveyance, the corporation, individual or individuals in whose employ any such officer, agent, servant, employee, master, pilot, engineer or driver shall be at the time such injury is committed, or who owns, operates or conducts any such railroad, locomotive, car, street car, electric car, terminal car, automobile, motor car, stage coach or other public conveyance at the time any injury is received, resulting from or occasioned by any defect or insufficiency, unskillfulness, negligence or criminal intent above declared, shall forfeit and pay as a penalty, for every such person, employee or passenger so dying, the sum of not less than two thousand dollars and not exceeding ten thousand dollars, in the discretion of the jury, which may be sued for and recovered," etc. [Sec. 5425, R. S. 1909.]

Plaintiffs' son was not a passenger, but, on the contrary, was an employee falling within the words, "any person" in the first clause of the statute, and, therefore, a right of action for his death would accrue only when it appeared his death was caused by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee "whilst running, conducting or managing any locomotive, car or train of cars," etc. Though it is sometimes said that this statute is compensatory in part, it has uniformly been declared to be highly penal in so far as it authorizes a recovery of not less than two thousand dollars nor to exceed ten thousand dollars in the discretion of the jury, without proof of pecuniary loss, and thus makes for an observance of due care on the part of those engaged in the operation of dangerous agencies in the community and subsisting on the patronage of the public at large. Its penal provisions are sustained

alone under the police power of the state and it is there-
fore to be both strictly construed and pursued. It affords
a cause of action to no one except where the subject-mat-
ter falls strictly within the letter of its provisions, for no
intendment goes beyond the usual meaning implied in its
words.   [Casey v. St. Louis Transit Co., 116 Mo. App.
235, 91 S. W. 419; s. c. 205 Mo. 721, 103 S. W. 1146.]   In
this view, it has been determined when one sues for a re-
covery, as here, on account of an alleged breach of duty
pertaining to the right assured under the first clause
of the statute, the wrongful act, averred to have occa-
sioned the death, must appear to be the negligence, un-
skillfulness or criminal intent of some officer, agent,
servant or employee of the railroad "whilst running, con-
ducting or managing the locomotive, car or  train  of
cars."   [See Rapp v. St. Joseph & Iowa R. Co., 106 Mo.
423, 17 S. W. 487;  Crumpley v. H. & St. J. R. Co., 98
Mo. 34, 11 S. W. 244.]   There is neither averment nor
proof of negligence, unskillfulness or criminal intent
touching any officer, agent, servant or employee of de-
fendant on the locomotive or train in this case nor of
those suggested to be engaged in managing or directing
its movements, other than Hampton, defendant's assist-
ant agent.

The averment and proof with respect to the erection
and maintenance of the semaphore post by defendant is,
of course, not to be considered in and of itself under this
clause of the statute and, as we understand, it is invoked
only as a circumstance in the case which contributed and
concurred together with the alleged negligent order of
Hampton to occasion the injury.   But on this matter,
it may be said there is no proof of negligence  with  re-
spect to the semaphore post, unless it be as to its situ-
ation on the depot platform and near its center, about
four feet from the train, and considerably apart from the
depot itself.   This situation of the post is unimportant
except in the circumstances of the particular case involv-
ing a sudden order to deceased to "get the hoop" when, it

is argued, an ordinarily prudent person should have anticipated as within the range of reasonable probability that the boy would collide with the post, though daylight prevailed. The situation of the post should be put aside in considering defendant's prima facie liability under the statute, for it is obvious the matter is to be solved by reference to the order which Hampton gave, and, in turn, determined on inquiring as to whether his order to "get the hoop" was given "whilst running, conducting or managing any locomotive, car or train of cars," etc. Even if the order so given by Hampton was a negligent one in the circumstances of the case, it is entirely clear that such negligence did not obtain as to his conduct, "whilst he was running, conducting or managing" the locomotive or train, for though he was an agent or servant, through which defendant communicated to the engineer an order which related to the management of the train, this duty had been completely performed by him at the time he ordered the plaintiffs' son to "get the hoop."

Plaintiffs rely for a recovery upon Rinard v. O. K. C. & E. R. Co., 164 Mo. 270, 64 S. W. 124, and insist the question under consideration is within the principle of that case, but we are not so persuaded. There plaintiff's husband, an employee of the railroad, came to his death through a collision with another train which occurred because of the negligence of a train dispatcher, and the Supreme Court ruled the negligence of the train dispatcher to be that of an agent or servant of defendant pertaining to the management of the train which operated the collision. That the proposition of law there determined is sound beyond question no one will gainsay; for the train dispatcher directed the movements of the trains from one place on the road to another and designated the various meeting points therefor at stations. In so negligently performing that duty as to occasion a collision between trains on the same track while running on orders from him between stations, his order revealed

negligence directly connected with the management of the train. But no such question is presented here, for though Hampton himself was an agent instrumental in passing an order from a dispatcher to the brakeman on the locomotive pertaining to the movement of the train he was in no respect engaged in either managing, conducting or running the locomotive or train, but, instead, was a mere instrument in communicating a proper order about which no negligence appears. Furthermore, he had fully performed the task with respect to delivering the order without negligence and that was complete when the order to plaintiffs' son to "get the hoop" was given and this order was wholly disconnected with either managing, conducting or running the locomotive or train, for it related alone to a return of the hoop after the order to the train was delivered.

The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.