SAMUEL GRAY et al., Respondents, v. WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, December 31, 1913.

1. MASTER AND SERVANT: Railroads: Injury to Servant: Assigning Minor Forbidden Work: Sufficiency of Evidence. A railroad station agent directed an infant servant under him to get a hoop which the agent had utilized to deliver a message to a moving train, and the servant, while running along the station platform, with the train, to get the hoop, collided with a semaphore post on the platform, causing him to be thrown under the train and killed. It was the custom to pick up the hoops after they were thrown from the train and

the employees were not expected to keep pace with a moving train to get the hoops before they were thrown off, nor was any order to that effect given to decedent at the time of the accident.  *Held*, that decedent was not required by defendant railroad company to work about moving trains contrary to his parents' direction, and hence a recovery could not be had on such ground.

2.  **NEGLIGENCE: Contributory Negligence: Foundation: Maxims.**  The doctrine of contributory negligence is founded upon the maxim, "*In jure non remota causa sed proxima spectatur.*"

3.  ———: **Contributory Negligence of Children.**  The standard by which the negligence of a child is to be measured is not the degree of care to be reasonably expected of an ordinarily prudent man, but the degree of care to be reasonably expected of a child of his age; but where he is fully able to comprehend a danger, he may be declared guilty of negligence as a matter of law for failing to avoid it.

4.  ———: ———: **Facts Stated.**  A railroad station agent directed an eighteen-year-old boy working under him to get a hoop which the agent had utilized to deliver a message to a moving train, and the boy, while running along the station platform, with the train, to get the hoop, collided with a semaphore post on the platform, situated about one hundred feet from his starting point, causing him to be thrown under the train and killed.  *Held*, that decedent could have avoided running against the post, by the exercise of ordinary care, and hence he was guilty of negligence as a matter of law, barring a recovery for his death by his parents.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

REVERSED.

*J. L. Minnis* and *Robertson & Robertson* for appellant.

Under all the evidence, the court should have directed a verdict for the defendant and the court erred in refusing the defendant's peremptory instructions offered at the close of the plaintiffs' evidence and at the close of all the evidence.  (A) The evidence failed to show that Hampton gave any order at all, and if so,

there was no evidence it was addressed to the decedent. This was a total failure of proof. (B) And the evidence showed that Hampton and the decedent were fellow servants. Labatt on Master & Servant, sec. 512; McGowan v. Railroad, 61 Mo. 528; Blessing v. Railroad, 77 Mo. 410; Sheehan v. Prosser, 55 Mo. App. 569; Shaw v. Construction Co., 102 Mo. App. 666, 670-671; Smith v. Foundry Co., 122 Mo. App. 610. And therefore Hampton had no authority to order the decedent to get the hoop and in so doing was acting beyond the scope of his authority and defendant is not liable therefor. Overton v. Railroad, 111 Mo. App. 613. (C) Furthermore, it was not negligence for Hampton to order decedent to get the hoop. 21 Am. & Eng. Ency. Law (2 Ed.), p. 471. (D) The collision of decedent with the post was the direct and proximate result of his own lack of ordinary care. Frauenthal v. Gas Light Co., 67 Mo. App. 1; Coleman v. Land & Lumber Co., 105 Mo. App. 272; Butterfield v. Forrester, 11 East, 60. Sargent v. Railroad, 114 Mo. 348. (E) Decedent's act in colliding with the post was intervening and disconnected from Hampton's order and not the proximate result thereof, so no recovery can be had. Railroad v. Kellog, 94 U. S. 469; Anderson v. Railroad, 70 S. C. 490, 50 S. E. 202; Bridge Co. v. Seeds, 144 Fed. 605.

*H. S. Booth* and *Barclay, Fauntleroy, Cullen & Orthwein* for respondent.

(1) Hampton was the defendant's station agent, entrusted at the time with the master's power of control, delivered to the trainmen the messages which controlled the train's movement and represented defendant, and deceased was subject to his orders, and hence Hampton was a vice principal. Dayharsh v. Railroad, 103 Mo. 576; Smith v. Railroad, 92 Mo. 359; Moore v. Railroad, 85 Mo. 588; Stoddard v. Railroad, 65 Mo.

514; Cox v. Granite Co., 39 Mo. App. 424; Evans v. Railroad, 62 Mo. 49. (2) An employee entrusted with the duty of instructing a young and inexperienced servant has been held to be a vice principal upon the ground that the duty to instruct is that of the master. Wallace v. Standard Oil Co., 66 Fed. 260; Lebbering v. Struthers, 157 Pa. St. 312; Ingerman v. Moore, 90 Cal. 410; Newbury v. Getchel, etc., Co., 100 Iowa, 441; Minneapolis v. Lundin, 58 Fed. 525. (3) The age and inexperience of the deceased minor are material elements which should be considered on the issue of contributory negligence. The same standard of care that is applied to an experienced adult cannot be applied to a minor without experience. Obermeyer v. Mfg. Co., 120 Mo. App. 59; Rogers v. Printing Co., 103 Mo. App. 683; Campbell v. Railroad, 175 Mo. 161. (4) The action of the deceased must be judged in the light of the circumstances as they appeared to him at the time, and the order and its confusing effects are material factors which would cause an ordinarily prudent person to act as the deceased acted. Kleiber v. Railroad, 107 Mo. 147; Ephland v. Railroad, 57 Mo. App. 147; Dellemand v. Saalfeld, 175 Ill. 310. (5) Obedience to an order involving personal danger cannot be declared negligent as a matter of law, where, when as in this case, the danger was not so glaring as to clearly indicate danger to a prudent person. Schroeder v. Railroad, 108 Mo. 323; Stephens v. Railroad, 96 Mo. 207. (6) The defendant was guilty of putting an inexperienced boy at a dangerous employment against the will and contrary to the express orders of his father, and there was no valid contract of hire for this particular work as between the plaintiffs and the defendant, and the relation of master and servant between the boy and the defendant did not exist. In such circumstances the defendant would be liable for the death of the boy, unless it should be shown that his injury and death were the result of his own willful act. Coleman v. Land & Lum-

ber Co., 105 Mo. App. 254; Union P. Co. v. Fort, 17
Wall. 553; Coal Co. v. Haenni, 146 Ill. 614; Cole v.
Railroad, 71 Wis. 114; Egan v. Lumber Co., 94 Wis.
137; Mann v. Print Works, 11 R. I. 152; Robertson v.
Cornelson, 34 Fed. 716; Railroad v. Bayfield, 37 Mich.
205; Foley v. Horseshoe Co., 115 Cal. 184; Erickson v.
Railroad, 83 Mich. 281; Orman v. Mannix, 17 Colo. 564;
Coal Co. v. Gaffney, 119 Ind. 455; Kehler v. Schwenk,
151 Pa. 519; Jones v. Cotton Mills, 82 Va. 140; New-
bury v. Lumber & Mfg. Co., 100 Iowa, 441; Beet-Sugar
Co. v. Hight, 59 Neb. 100; Railroad v. Newman, 64 S.
W. 790.

ALLEN, J.—This is an action by plaintiffs, hus-
band and wife, for the death of their minor unmarried
son, alleged to have been caused by the negligence of
the defendant railroad company. Plaintiffs recovered
and the defendant prosecutes the appeal.

This is the second appeal of the case. The opin-
ion of this court on the former appeal will be found
under the style of Gray v. Railroad, in 157 Mo. App.
92, 137 S. W. 324. Plaintiffs' son at the time of his
death was about eighteen years and eight months of
age, and resided with his parents in Centralia, Mis-
souri. It appears that a written contract of employ-
ment had been entered into between plaintiffs, the par-
ents of the deceased, and the defendant, the latter's
regular form of employment contract being utilized for
such purpose; but it appears that the deceased's duties
were to act as a messenger for the Western Union Tel-
egraph operator at this station, who was also employed
by the defendant to handle its train messages. Defend-
ant's station agent also paid him a small sum per
month for sweeping the station every morning.

On behalf of plaintiff there was testimony to the
effect that there was an oral agreement between the
boy's father and defendant's station agent, to the ef-

179 App. 35

fect that the boy was to "have nothing to do with the train service whatever," and would not be required to work about the trains.

At the time of the injury and death of plaintiffs' said son, the defendant maintained at this place a long platform extending some three hundred feet along and north of its railway tracks, in front of its station, and which was perhaps about sixteen feet in width. The tracks extended nearly east and west. In this platform stood a semaphore pole about twenty-five feet high, at the top of which were arms to be used for signalling purposes. It appears that this post stood nearly five feet from the outer or south edge of the platform, and about eleven feet from the depot building, directly in front of the telegraph office.

On September 28, 1908, an eastbound freight train of defendant approached and was passing the station and platform at this place at a rate of speed that is estimated at from six to ten miles per hour. It appears that orders were to be passed to the trainmen on this train by means of wire hoops; it being customary to deliver orders in this way to passing trains, the same being fastened to the hoops and the latter held aloft in order that someone on the train might catch them by running his arm therethrough, the hoops being thrown off upon the platform or premises near-by after the orders had been taken therefrom.

Upon the day in question, one Hampton, appellant's agent, was standing upon the platform about one hundred feet west of the semaphore pole, with two of these hoops to be used to thus transmit orders to the crew of the passing freight train. Standing near him were the deceased, one McBride who was the baggage man at this place, and one Montgomery. It appears that Hampton held one of the hoops aloft and it was caught by the brakeman on the train who stood in the "gangway" back of the engine; and plaintiffs' witnesses testified that as this was done, and while Hamp-

ton was looking toward the train, he said: "Get the hoop." The testimony is that this order was spoken in an ordinary tone of voice, with nothing to indicate to whom it was directed. Deceased, however, apparently understood that it was directed to him. He thereupon ran east along the platform after the hoop which was then in the hands of the brakeman on the passing train, who was taking the order therefrom. Deceased thus ran, following the train, the aforesaid distance of about one hundred feet, when he collided with the semaphore pole, whereby he was thrown against and fell beneath the passing train and was killed.

When the case was here before, it was reversed for the reason that plaintiffs undertook to make a case under section 5425, Revised Statutes 1909, and this court held that the petition stated no cause of action under that section. Upon motion of respondents there, the judgment of reversal outright was modified, and the cause was reversed and remanded for further proceedings.

Learned counsel for respondents now contends that this court, on the former appeal, adjudged that plaintiffs' case fell within section 5426, Revised Statutes 1909, and that, when properly presented, the case was one for the consideration of the jury, and that such is now the law of this case. A reading of the former opinion, however, will readily disclose that nothing was there adjudicated except that plaintiffs had no cause of action under section 5425, supra, under which plaintiffs were then attempting to proceed; and that the case was not considered upon the merits.

A recovery is sought in part upon the theory that defendant committed an actionable wrong by imposing upon plaintiffs' deceased minor son duties not within the scope of the contract of hiring made with the father, in that deceased was permitted to perform duties about moving trains, and in part upon the theory that it was

negligence on the part of defendant's station agent to give the order to "get the hoop" under the circumstances aforesaid, which is alleged to have been given suddenly and abruptly, whereby plaintiffs' son was startled, confused and alarmed, and that the order was one that required instant and sudden execution, and that in executing the same it would be natural and probable that deceased would run after the hoop, keeping his eye upon it, and thus run against the semaphore pole and be injured.

Much of the argument in appellant's brief pertains to the question whether plaintiffs can have any right of action under section 5426, supra, growing out of the alleged violation of the contract of employment as aforesaid; appellant's position being that such wrongful act, if any, is not one which would have entitled the deceased to maintain an action therefor, if death had not ensued, and that therefore such right of action, if any, would not survive to plaintiffs.

We deem it unnecessary to discuss this phase of the case, however, for we find no evidence in the record whatsoever tending to show that the defendant assigned to or imposed upon deceased any duties outside of the scope of the contract of hiring, or placed him at work about the moving trains against his father's directions. There is absolutely nothing to show that, at any time prior to the accident, defendant had assigned to plaintiffs' son, or requested him to perform, such an undertaking as he was engaged in at the time he met his death, to-wit, running along with a moving train for the purpose of getting a hoop, or other object, or that he was required to work about the trains at all. The record shows that these hoops were passed to moving trains and thrown off from the latter, and later picked up by employees and others and returned to the office. And if deceased was theretofore expected to thus pick them up, as did other employees, it did not require him to work about the moving trains.

Gray v. Railroad Co.

Such was the custom with respect to getting these hoops, and if any employee was ever expected to try to keep pace with a moving train to get the hoops before they were thrown off, this record wholly fails to reveal it. And so far as concerns that which took place on the occasion in question, the evidence fails to show that defendant's agent assigned to deceased the task of pursuing the moving train. Plaintiffs' evidence is that what the station agent said, was merely "get the hoop;" those words being spoken by him in an ordinary tone of voice and while he was looking toward the brakeman on the train to whom he passed the hoop. This alone, in the face of the fact that the hoops were intended to be thrown from the trains and picked up from the platform or ground, and that such was the invariable custom, so far as the evidence reveals, and with absolutely nothing else appearing in the record, cannot be taken as an intentional assignment to deceased of the task of pursuing the train and getting the hoop in a manner not shown to have been ever theretofore expected of anyone, or to have ever been attempted, to-wit, by pursuing the train and receiving the hoop before it was thrown off—an altogether unnecessary and useless task.

Plaintiffs' evidence fails to reveal anything more on this score than what we have indicated above. And defendant's evidence did not help plaintiffs' case in this regard, but on the contrary went very strongly to show that such manner of getting the hoops was not expected or contemplated by anyone. Indeed, defendant's brakeman testified that he could not make out what the boy wanted when he saw the latter running near the train and reaching up his hand as the brakeman was taking the order from the hoop.

Plaintiffs' case must rest upon the alleged negligence of defendant's agent in giving the "order" in question, under circumstances which might lead the deceased to suppose that he was to pursue the train; not

that the latter was thereby purposely assigned a hazardous task, but that it was negligence on the part of the agent to speak these words when and as he did. It is by no means clear that the evidence can be said to at all sustain plaintiffs' theory in this regard. The testimony does not show a sudden and abrupt order given as plaintiffs contend, such as was likely to cause deceased to become startled, confused and alarmed thereby. On the contrary, the only testimony relating to this question is that what was spoken was said in an ordinary tone of voice, and was apparently addressed to no one in particular. And besides, it is difficult to see how it can be said that defendant's agent "knew or might have known by the exercise of ordinary care, . . . that in executing said order it would be natural and probable" that deceased would run against the post and thereby be injured or killed by the passing train, as plaintiffs' allege in their petition and count upon to sustain their cause of action.

But be this as it may, deceased, as we have said, was nearly nineteen years of age, and it appears that he was an intelligent youth, and was entirely familiar with the semaphore post and its location, for he had been working about it for several months. The post itself, it seems, was a substantial one, some twenty-five feet high, and standing in plain view. It was located out in the platform about eleven feet from the wall of the depot building, in order that it might not be hidden from the view of those in charge of west bound trains by a water tank situated a little east of the platform.

When deceased started after the hoop, he was, according to the testimony, about one hundred feet away from the post. He ran this entire distance, and then, evidently without looking, or taking the slightest heed as to where he was going, ran blindly and headlong into the post. Such being the case we see no es-

cape from the conclusion that he was guilty of such negligence as to preclude a recovery by plaintiffs.

In Wheat v. St. Louis, 179 Mo. l. c. 581, 582, 78 S. W. 790, where plaintiff was injured by driving upon an obstruction in the street, our Supreme Court said:

"In short the rule is supported not only by the almost universal trend of authority, both English and American, but also by the plainest principles of right and justice. While the city owes the citizen the duty to keep the highways reasonably safe for persons to pass over, the citizen owes the city the duty . . . not to run into obstructions that he is familiar with *or which, by the exercise of ordinary care, he could discover and easily avoid.* And while the city may be negligent in the discharge of its duty, the citizen may also be negligent in the discharge of his duty. And if both are negligent and their negligence contributes to the injury, there can be no recovery. And if the plaintiff's negligence necessarily contributed to the happening of the injury, there can be no recovery."

To the same effect are: Kaiser v. St. Louis, 185 Mo. l. c. 374, 84 S. W. 19; Coffey v. City of Carthage, 186 Mo. l. c. 585, 85 S. W. 532; Cohn v. City of Kansas, 108 Mo. l. c. 393, 18 S. W. 973; Woodson v. Street Ry. Co., 224 Mo. 685, 123 S. W. 820; Ryan v. Kansas City, 232 Mo. 471, 134 S. W. 566, 985; Border v. Sedalia, 161 Mo. App. 633, 144 S. W. 161; Yahn v. City of Ottumwa, 60 Iowa, l. c. 433.

Such is undoubtedly the rule with respect to the duty devolving upon a traveller upon the highway, and *a fortiori* would it be the duty of one in the position of deceased, thoroughly familiar with the premises in question, not to run into obstructions, in broad daylight, with which he is familiar and which are plainly obvious to him, and which he may easily avoid by the exercise of ordinary care. [In this connection see Loring v. Railroad, 128 Mo. 359, 31 S. W. 6; Fore v. Railroad, 114 Mo. App. 551, 89 S. W. 1034.]

The doctrine of contributory negligence is founded upon the maxim, *"In jure non remota causa sed proxima spectatur."* Here we think it quite clear that the proximate cause of deceased's unfortunate injury and death was not the act of defendant's agent in question, if that can be said to be negligence, but was the act of the deceased in negligently running against the pole, whereby he was precipitated under the moving train. That he could have avoided the danger by the exercise of ordinary care is quite apparent. And the law required that he exercise such care for his own safety. Applicable to such a situation as this is the early and well-known English case of Butterfield v. Forrester, 11 East, 60, where the plaintiff, about dusk, drove upon an obstruction in the street, and was injured; and it was held that if plaintiff could have seen the obstruction and have avoided his injury by the exercise of ordinary care, he could not recover. Such is our law today.

Had deceased, upon an unusual order being suddenly given him, become confused and alarmed, and, turning suddenly to execute the same, been injured because of some near-by defect or obstruction in the platform, which he had thus been caused to overlook, there might be some room for such a contention as is here made. But such was not the case. Deceased ran headlong for a distance of approximately one hundred feet, and, without looking in the direction in which he was proceeding, ran into the semaphore pole.

It may be said that the standard by which deceased's negligence is to be measured is not the degree of care to be reasonably expected of an ordinarily prudent man, but the degree to be reasonably expected of an ordinarily prudent youth of his age. [See Moeller v. United Rys. Co., 242 Mo. 721, 147 S. W. 1009.] But it cannot be doubted that he was fully able to comprehend the danger from running into such an obstacle as he did, and that under the circumstances he may

properly be declared guilty of negligence as a matter of law. [See McNulty v. Railroad, 166 Mo. App. 439, 148 S. W. 973; McGee v. Railroad, 214 Mo. 530, 114 S. W. 35; Herdt v. Koenig, 137 Mo. App. 589, 119 S. W. 56; Hight v. Bakery Co., 168 Mo. App. 431, 151 S. W. 776; Battles v. United Rys. Co., 178 Mo. App. 596.]

For the reasons given above, the judgment should be reversed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.